## COLLINS v. BRADLEY CO.

### (District Court, W. D. Wisconsin. October 30, 1915.)

1. EQUITY ☞362—PLEADING—MOTION TO DISMISS.

   Under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) and Act March 3, 1915, c. 90, 38 Stat. 956, which provides that "any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court," a motion to dismiss a bill because complainant has an adequate remedy at law will not lie.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 958–961; Dec. Dig. ☞362.]

2. EQUITY ☞441—SUIT FOR ENFORCEMENT OF DECREE—SUIT IN EQUITY.

   A bill in equity is the proper remedy for enforcing a decree of another court of equity for an accounting.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1058–1064; Dec. Dig. ☞441.]

3. CONTRACTS ☞355—ACTIONS—JUDGMENT.

   Complainant had a claim against defendant corporation, which a majority of the stockholders acknowledged and were willing to pay, but because of dissent of the remaining stockholders they caused defendant to pay their proportionate share of the claim, taking an agreement from complainant to assign to defendant a proportionate share of any sum received by suit. In a suit on the claim the court treated such agreement as a payment, and entered decree only for the balance due. Held, that by such action defendant obtained the full benefit of the agreement, and could not claim thereunder any share of the sum recovered by the decree.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. ☞355.]

In Equity. Suit by Wallace G. Collins against the Bradley Company. On motion to dismiss and final hearing. Motion denied, and decree for complainant.

C. H. Van Alstine, of Milwaukee, Wis., and H. H. Field, of Chicago, Ill., for plaintiff.

Jones & Schubring, of Madison, Wis., for defendant.

SANBORN, District Judge. Final hearing on bill in equity to enforce a decree in an accounting suit between the same parties, rendered by the United States District Court of the state of Washington. By the bill the equity jurisdiction is alleged to depend upon the fact that this action is brought to enforce a decree in chancery, and also that defendant will claim an unjust set-off against part of that decree, if any action at law is brought upon it. Defendant filed its answer and counterclaim, setting up such set-off, and at the hearing filed a motion to dismiss the suit, on the ground that the bill does not state a case on the merits and that plaintiff has an adequate remedy at law. Evidence was taken, and the case submitted on the motion, pleadings, and proofs.

It appears that the Washington suit was one of accounting, brought upon an oral contract between Collins and one William H. Bradley, to the effect that the former should have a 26⅔ per cent. interest in the profits of certain timber land which Collins was instrumental in ac-

quiring for the Bradley Company. Collins' contract being oral, it was claimed by the defendant that he was not a competent witness as to its terms under the Washington statute, because William H. Bradley was not living at the time of the hearing. The court, however, held that Collins was a competent witness. The total profits realized on the sale of the property were $279,500.33, of which the interest of Collins under the agreement was $93,166.77. In the original bill in the Washington suit it was alleged that the total profits were about $282,000, and Collins' share about $94,000, and that the Bradley Company had paid (or caused to be paid) to Collins $74,739, but refused to pay any further sum. Later an amended bill was filed, so drawn as to omit the allegation of partial payment, and claiming the whole of Collins' share. The original bill was filed November 10, 1910, and the amended bill in April, 1911.

After the death of William H. Bradley an agreement, called Exhibit A, was made between Collins and four of the stockholders of the Bradley Company, owning five-sixths of its stock, to the effect that there should be paid to Collins, on account of profits on the transactions aforesaid, such proportion of 26⅔ per cent. of the net profits as the stock held by each shareholder signing Exhibit A should bear to the entire capital of the corporation. And on August 12, 1907, after the whole of the net profits had been realized, Collins signed a paper, known as Exhibit B, in which Collins acknowledged payment of $72,842.97, in consideration whereof he assigned to the four stockholders who signed Exhibit A all his interest under Exhibit A, and then proceeding as follows:

"And in case I shall prosecute to final judgment and obtain a recovery of any sum against Bradley Company upon my claim for 26⅔ per cent. of the net profits realized upon said lands, which claim is referred to in said contract, then and thereupon said Bradley Company shall be entitled to, and shall have from me, on demand and without further consideration, an assignment and transfer to it of an undivided 4998⅓/6000 share of such judgment, and in case I should fail or neglect to make such assignment and transfer, this receipt shall operate as a discharge and satisfaction pro tanto of such judgment."

The reason why Exhibits A and B were made was that there was a dispute between the stockholders as to the validity of Collins' claim. The Bradleys, holding five-sixths of the capital, were willing to concede validity, and pay the claim in full. But one shareholder, Mrs. Kelly, owning the rest of the capital, took the position that the Collins agreement was never made, if actually made was oral, could never be proved after the death of William H. Bradley, and that the corporation should vigorously defend. So the Bradleys signed Exhibit A, the corporation paid the $72,842.97, which was their proportion of Collins' claim, and the corporation in turn withheld a like amount from these shareholders out of the dividends they would otherwise have received, derived from the net profits.

When the accounting suit came on for hearing, Collins testified to the contract, and the court decided that he was a competent witness. Counsel for plaintiff also offered in evidence Exhibits A and B. These papers, not being contracts of the corporation, were vigorously objected to by defendant as entirely improper, tending to improperly

influence the court on the main question of the existence of the oral agreement. They were admitted, however; the court stating that they would not be considered on the merits. After deciding that Collins' testimony was admissible, and that the contract was established, the court in his opinion said:

"The relief to which the complainant is entitled, and the form of the decree, was not discussed at the hearing or in the briefs. The bill did not give credit for the sums paid by the corporation under the agreement between the stockholders as above set forth, perhaps from a desire on the part of the complainant to protect these stockholders from further liability. I am of opinion, however, that the payments thus made must be treated as if made by the corporation, and the stockholders must settle their equities between themselves as best they can. The complainant is entitled to the balance due as above stated, with interest and costs, and a decree will be entered accordingly."

In the decree it was found that plaintiff was entitled to $93,166.17, and after applying the payment he should recover the balance, with interest, amounting to $22,837.

[1] *Remedy at Law.* Defendant has moved to dismiss on the ground that plaintiff has an adequate remedy at law. No such motion lies under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), providing only for a transfer to the law side. The rule is much broadened by Act March 3, 1915, c. 90, 38 Stat. 956, creating section 274a of the Judicial Code. Under this legislation:

"Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court."

The statute undoubtedly applies to this action, although passed after its commencement. The equity rule and the statute have swept away entirely any and all technical objection whatsoever. While the Constitution preserves the right to a jury trial in every action at law, the practice as to raising the objection is revolutionized. Defendant's motion to dismiss may be taken as a motion to transfer the case to the law side, if the remedy at law is adequate; so it is unnecessary to consider that question.

[2] Plaintiff argues that he has no complete or efficient remedy at law, because it is doubtful whether a court of law could relieve him from the quoted clause of Exhibit B, providing for an assignment of five-sixths of the amount decreed. Plaintiff further urges that a bill in equity is the proper remedy for enforcing a decree, under Shields v. Thomas, 18 How. 253, 15 L. Ed. 368. Shields v. Thomas was an equity suit, brought, like this, to enforce payment of a decree. The court say:

"With respect to the character and effects of decrees in chancery, although they now rank in dignity upon an equality with judgments at law, it is well known that they were once regarded as not being matters of record, and that the final process incident to judgments at law was unknown to and not permitted in courts of equity; that where such process has been permitted to them, it has been the result of statutory enactments. But the extension to a court of equity of the power to avail itself of common-law process cannot be regarded as implying any abridgment of the original constitutional powers or practice of the former, but as cumulative and ancillary, or as leaving those powers and that practice as they formerly existed, except as they should have been expressly restricted. Amongst the original and undoubted powers of a

court of equity is that of entertaining a bill filed for enforcing and carrying into effect a decree of the same or of a different court, as the exigencies of the case or the interests of the parties may require. Vide Story's Equity Pleading, §§ 429, 430, 431, upon the authority of Mitford, Eq. Pl. 95, and of Cooper's Eq. Pl. 98, 99." Shainwald v. Lewis (D. C.) 69 Fed. 487.

It may also be noted that the provision, now found in section 267 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163; section 723, R. S. [Comp. St. 1913, § 1244]), adopted in 1789, was—

"merely declaratory, making no alteration in the rules of equity on the subject of legal remedies, but only expressive of the law which has governed proceedings in equity since their adoption in the courts of England." Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873.

Reference was had to the English chancery system, unaffected by state laws. Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819.[1] Under that system a decree for accounting was not, like a judgment at law, for so much money, but directed the defendant to account for and pay over a certain sum. In other words, such decrees were in personam, and not in rem. 1 Pom. Eq. Jur. § 170. It is true that, under the practice for the last hundred years or more, final decrees for money in accounting suits have provided that complainant recover a definite sum, the same as judgments at law, and actions at law might be brought on such decrees. Pennington v. Gibson, 16 How. 65, 14 L. Ed. 847. But it is also true that in the construction of section 723 the analogies of the English equity practice are to be followed, rather than the modified system of American courts. Shields v. Thomas is quite similar to the present action, has never been disapproved by the Supreme Court, and there is no reason for departing from the rule there adopted.

Whether a suit at law would afford as prompt and efficient a remedy as this action is doubtful. Exhibit B provides that Collins shall assign to Bradley Company a large share of the recovery, and if he does not do so five-sixths of the amount shall be ipso facto discharged. It is probable that the Washington decree amounted to a ruling that, when the $72,000 payment had been applied, the consideration for Exhibit B failed, and that this could be adjudged at law as well as in equity. At the same time an injunction restraining defendant from taking any benefit from that instrument is more efficient.

Defendant loses nothing by being deprived of a jury trial. There is no disputed question of fact in the case. Had the action been on the law side, the court must have directed a verdict one way or the other. Obviously the question of remedy at law is of little or no consequence in this particular case, especially in view of rule 22 and the legislation of 1915.[2]

[1] This rule is subject to very few exceptions, one of which is a suit to restrain void taxes. In such a case the state law affords an adequate remedy. Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288.

[2] In the recent case of United States v. Illinois Surety Co., 226 Fed. 653, —— C. C. A. ——, in the Circuit Court of Appeals of this circuit, on rehearing, there was a motion to dismiss on the ground that the suit should have been in equity instead of at law, and it was held that the objection was waived, but that it was of no practical importance which forum was the proper one, because the facts were practically undisputed.

[3] *Effect of Exhibit B.* This paper admitted that Collins had received $72,842.97 from the Bradley Company, in consideration whereof he assigned to it all his claim under Exhibit A. Collins also agrees that, in case he shall obtain judgment and recover "any sum" against Bradley Company on his claim for 26⅔ per cent. of the profits of the lands referred to in Exhibit A, then Bradley Company shall have from him, on demand and without further consideration, an assignment of five-sixths of such recovery, "and in case I should fail or neglect to make such assignment and transfer this receipt shall operate as a discharge and satisfaction pro tanto of such judgment." Defendant now claims that, since Collins has recovered $22,000 upon his claim for profits, he must assign five-sixths of it, and can in this action get only the remaining one-sixth.

The plain answer to this contention is that defendant has already obtained, in effect, such assignment. The true intent and meaning of Exhibit B is that if Collins should obtain judgment for the full amount of his claim, without any credit for the sum paid him, then the judgment should be pro tanto discharged. Exhibit B grew out of Exhibit A, made between Collins and the shareholders. Bradley Company did not sign Exhibit B, which was not technically admissible in the Washington suit on behalf of the plaintiff, although it might properly have been received, if offered by defendant as a payment, though defendant would never have offered it because of its implication of the justice of the demand. But it was received in evidence and given its full effect by the trial judge. Thereby defendant obtained all it could ever be entitled to under it, and cannot have any more. All consideration for the agreement to assign failed as soon as the court gave defendant all the benefit coming to it by virtue of its partial payment. The assignment, in substance and effect, was made by operation of law as soon as the credit was applied, and defendant cannot have a second technical transfer in order to defeat a claim held just in the former decree.

There should be a decree for the amount claimed, and an injunction restraining defendant from setting up any claim under Exhibit B, with interest and costs.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes